CHAD A. READLER
Acting Assistant Attorney General

JOSEPH H. HARRINGTON
Acting United States Attorney

TERRY M. HENRY
Assistant Branch Director

ANDREW I. WARDEN (IN Bar No. 23840-49)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Tel: (202) 616-5084
Fax: (202) 616-8470
E-Mail:  andrew.warden@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IN RE APPLICATION OF ZAYN AL-ABIDIN MUHAMMAD HUSAYN (ABU ZUBAYDAH) and JOSEPH MARGULIES | No. 17-CV-171-JLQ<br><br>STATEMENT OF INTEREST OF THE UNITED STATES |

UNITED STATES' STATEMENT OF INTEREST

**INTRODUCTION**

Pursuant to 28 U.S.C. § 517, the United States of America submits this Statement of Interest to advise the Court of the United States' interest in this case.

The United States has actively participated in two pending cases in this District related to the discovery of information concerning the Central Intelligence Agency's (CIA) former detention and interrogation program.  *See Salim v. Mitchell*, Case No. 15-CV-286 (JLQ); *Mitchell v. United States*, 16-MC-36 (JLQ).  This case is another action that seeks the disclosure of alleged information about the CIA's former program.  Here, Abu Zubaydah, a former detainee in that program, has filed an *ex parte* application pursuant to 28 U.S.C. § 1782, seeking the Court's authorization to serve deposition and document subpoenas on Dr. James Mitchell and Dr. John "Bruce" Jessen, two psychologists who worked as independent contractors for the CIA in the former program and who are defendants in *Salim.  See* Application (ECF No. 1).  Zubaydah seeks a broad range of information from Dr. Mitchell and Dr. Jessen about the CIA's alleged detention and interrogation activities allegedly occurring in Poland, as well as information about Poland's alleged participation in those alleged activities.  *See id.*, Ex. 1-4.  Zubaydah asserts that the purpose of his subpoenas is to provide the requested information to prosecutors in Poland for use in a Polish criminal investigation regarding the CIA's alleged detention activities in Poland.  *See id*. at 7-10.

The United States has a substantial interest in the proper construction of 28 U.S.C. § 1782, which at the request of interested persons authorizes federal district courts to provide foreign tribunals with assistance in obtaining evidence for use in

UNITED STATES' STATEMENT OF INTEREST - 1

foreign proceedings.  The United States utilizes Section 1782 on behalf of foreign tribunals when compelling evidence requested through letters rogatory and letters of request.  *See, e.g., In re Letter Rogatory from the First Court, Caracas*, 42 F.3d 308, 309 (5th Cir. 1995).  The Department of Justice's Office of Foreign Litigation, in its capacity as the United States Central Authority under the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters, 23 U.S.T. 2555 (1968), relies upon Section 1782 to obtain orders from district courts requiring the production of evidence for use in foreign civil litigation.  *See* 28 C.F.R. § 0.49.  The United States has also utilized Section 1782 to execute requests from foreign governments for witnesses or evidence in criminal matters under Mutual Legal Assistance Treaties ("MLATs").  *See, e.g., In re Commissioner's Subpoenas*, 325 F.3d 1287, 1290-1291 (11th Cir. 2003).[1]  Accordingly, the United States has a significant interest in the proper application of Section 1782, which plays an important role in facilitating international judicial cooperation, resolving foreign disputes, and fostering international comity.

In furtherance of these interests, the United States opposes Zubaydah's Section 1782 Application in this case.  Zubaydah has invoked the statute in an attempt to obtain U.S. Government intelligence information allegedly within the knowledge or possession

---

[1] Since 2009, the Department of Justice has typically used the Foreign Evidence Request Efficiency Act of 2009, 18 U.S.C. § 3512, to implement requests from foreign governments in criminal matters for evidence not in the control of the United States.

UNITED STATES' STATEMENT OF INTEREST - 2

of former Government contractors for the purpose of providing that alleged information to prosecutors of a foreign government.  Zubaydah's application is inconsistent with Section 1782's purpose and seeks to circumvent established treaty procedures that provide foreign governments with the ability to seek evidence within the United States for their criminal investigations.  Here, the governments of the United States and Poland have agreed to an MLAT specifically providing for the exchange of evidence for criminal investigations.  Poland has invoked the treaty on multiple occasions since 2009 to seek information for its criminal investigation into alleged CIA activities in Poland, and the United States has denied those requests in accordance with the terms of the treaty.  Accordingly, the Court should deny Zubaydah's attempt to use Section 1782 to circumvent the treaty.  Zubaydah should not be permitted to obtain evidence through this Court for the potential use by the Polish Government that Poland is not legally authorized to receive under the treaty.

In the event, however, the Court grants Zubaydah's application, the Government requests that the Court establish a return date for the subpoenas at least 60 days after service in order to give the United States sufficient time to consider whether to assert any applicable privileges over the alleged requested information, including potentially the state secrets privilege, and to file any appropriate motions with the Court.  The CIA has a strong interest in protecting any classified, protected, or privileged information from disclosure and, given the subject matter at issue in Zubaydah's proposed subpoenas, the Government has an interest in preventing Dr. Mitchell and Dr. Jessen from confirming or denying Zubaydah's allegations to the extent any such responses

would harm the national security or foreign relations of the United States.

## **BACKGROUND**

Abu Zubaydah is a "terrorist leader" who was a "longtime ally of Osama bin Laden, operated terrorist training camps in Afghanistan and led a force that engaged in hostilities against U.S. and Coalition forces" following the attacks of September 11, 2001. *Ali v. Obama*, 736 F.3d 542, 546 (D.C. Cir. 2013); *Barhoumi v. Obama*, 609 F.3d 416, 418, 423 (D.C. Cir. 2010). Zubaydah was captured in Pakistan in March 2002 following a firefight. *See* Statement by the White House Press Secretary (Apr. 2, 2002), 2002 WL 485428 (Apr. 2, 2002). He was initially detained by the CIA as part of the Agency's former detention and interrogation program. *See* President Discusses Creation of Military Commissions to Try Suspected Terrorists, 2006 WL 2556600 (Sept. 6, 2006). Since 2006, he has been detained by the Department of Defense at the United States Naval Station, Guantanamo Bay, Cuba. *See id.*

Zubaydah has filed various lawsuits in domestic and international courts related to his detention. *See Husayn v. Mattis*, 08-CV-1360 (EGS) (D.D.C.) (habeas corpus action); *Zubaydah v. Lithuania*, No. 46454/11 (Eur. Ct. H.R.) (damages action). As relevant here, in January 2013, Zubaydah filed a complaint against the Government of Poland in the European Court of Human Rights (ECHR) alleging violations of the European Convention on Human Rights based on Poland's alleged assistance to the CIA's former detention and interrogation program. One of the issues considered by the ECHR was whether Poland had conducted an effective investigation into Zubaydah's allegations of mistreatment in accordance with Article 13 of the Convention. *See*

UNITED STATES' STATEMENT OF INTEREST - 4

Declaration of Andrew Warden, Ex. 1, *Zubaydah v. Poland* (Eur. Ct. H.R.) (App. No. 7511/13) ¶ 535 (hereinafter *Zubaydah*).  In response to Zubaydah's petition, Poland notified the ECHR that it had opened a criminal investigation in March 2008 focusing on potential violations of Polish law by Polish officials, and explained the efforts it had undertaken to pursue the investigation.  *See id*. ¶¶ 126-134.

As part of its submission to the ECHR, Poland explained that it submitted multiple requests for legal assistance to the United States in accordance with the MLAT between United States and Poland.  *See id.* ¶ 132.  The U.S.-Poland MLAT was signed by representatives of both countries on July 10, 1996, and following the advice and consent by the Senate in 1998, entered into force on September 17, 1999.  *See* Treaty Between the United States of America and the Republic of Poland on Mutual Legal Assistance in Criminal Matters, Treaty Doc. 105-12, 1996 WL 905552 (U.S-Poland MLAT).[2]  As with other MLATs, the treaty is "self-executing"; it "required no

---

[2] The United States has entered into more than fifty bilateral MLATs with other countries.  For additional information about MLATs generally and their proliferation in recent years, *see In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563-64 (9th Cir. 2011).  In 2003, United States and Poland agreed to modify and supplement some of the original provisions of the 1999 U.S-Poland MLAT.  *See* Mutual Legal Assistance Agreement with the European Union, Treaty Doc. No. 109-13, 2003 WL 25297816 at *187-199, Annex Treaty Between the United States of America and the Republic of Poland on Mutual Legal Assistance in Criminal Matters.

UNITED STATES' STATEMENT OF INTEREST - 5

implementing legislation to take effect within the United States"; and it "stands on the same footing as a federal statute." *See Bellevue*, 634 F.3d at 568. Pursuant to the treaty, the United States and Poland undertake to provide a variety of forms of assistance to each other in connection with the investigation and prosecution of criminal acts. *See* U.S.-Poland MLAT. The treaty designates a "Central Authority" from each country "to make and receive requests pursuant to th[e] Treaty." *See id.*, art. 2. The Attorney General has delegated the Central Authority functions to the Department of Justice's Office of International Affairs. *See* Delegation of Authority Concerning Mutual Legal Assistance, 82 Fed. Reg. 10546-01 (Feb. 14, 2017). The treaty provides the Central Authority with exclusive authority over MLAT requests and sets forth certain conditions under which the Central Authority "may deny assistance," including that "the execution of the request would prejudice the security or similar essential interests of the Requested State." *See* U.S.-Poland MLAT, art. 3(1)(c). Poland's submission to the ECHR explained that the United States Central Authority did not grant any of Poland's MLAT requests related to its investigation of alleged CIA activities in Poland, including on the basis that the requests would prejudice the security or essential interests of the United States. *See Zubaydah* ¶¶ 132, 143.

On July 24, 2014, the ECHR issued a 225-page decision concluding, among other things, that Poland failed to conduct an effective investigation into Zubaydah's allegations. *See id.* ¶¶ 534-45. After the ECHR judgment became final, Zubaydah's case was transferred to the Committee of Ministers of the Council of Europe, the governing European entity that supervises the execution of judgments issued by the

UNITED STATES' STATEMENT OF INTEREST - 6

ECHR.  *See* Supervision of Execution of Judgments of the European Court of Human Rights, www.coe.int/en/web/cm/execution-judgments.  Since that time, Poland has filed a series of reports with the Committee explaining the remedial measures Poland has undertaken to comply with the ECHR's judgment to investigate Zubaydah's allegations of mistreatment.  In May 2015, Poland filed a report explaining that it had submitted six applications for assistance under the MLAT, but the United States Central Authority refused to grant the requests.  *See* Warden Decl., Ex. 2, Communication From the Authorities Concerning the Al Nashiri and Abu Zubaydah Cases Against Poland (App. Nos. 28761/11 & 7511/13) (May 15, 2015).  The report further explained that the issue of the United States' cooperation with Poland's criminal investigation had been the subject of discussions among high ranking officials of both governments, including the Attorney General of the United States and the Assistant Secretary of State for European and Eurasian Affairs.  *See id.* at 3.

In its most recent submission to the Committee, filed in March 2017, Poland described with additional specificity the various MLAT requests it had submitted to the United States since 2009, and the United States' denial of those requests.  *See* Warden Decl., Ex. 3, Updated Action Plan from Poland Concerning the Al Nashiri and Abu Zubaydah Cases Against Poland (App. Nos. 28761/11 & 7511/13) (Mar. 23, 2017).  Poland also represented that it intended to engage with Zubaydah's lawyers concerning alternative ways to obtain evidence for the pending investigation, which Polish prosecutors have extended until September 11, 2017.  *See id.* at 16, 22.

## **ARGUMENT**

**I.     The Court Should Exercise Its Discretion To Deny Zubaydah's Section 1782 Application.**

To grant an application under 28 U.S.C. § 1782, the Court must conclude that the moving party has satisfied both statutory and discretionary factors. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260-65 (2004). As relevant here, Section 1782 provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Although the United States does not contest that Zubaydah, as opposed to his co-Petitioner, has satisfied the minimum statutory elements, that is only the beginning of the analysis.[3] The Court has substantial discretion to deny a Section 1782 request and,

---

[3] The United States does not challenge Zubaydah's status as an "interested person" with standing to invoke Section 1782, based on the United States' understanding that Zubaydah has been granted "injured person" status by the Polish Government under Poland's Code of Criminal Procedure, which grants injured persons various procedural and participatory rights in pending criminal investigations. By contrast, the United States is unaware of, and the record does not contain, a separate factual basis to

as explained below, the Court should exercise that discretion to deny Zubaydah's

sweeping discovery requests in this case. *See Intel*, 542 U.S. at 264-65.

   "[A] district court is not required to grant a § 1782(a) discovery application

simply because it has the authority to do so." *Intel*, 542 U.S. at 264. "The absolute

requirements under § 1782 are only part of the story," and "courts have stressed that,

even if those requirements are met, a district court still retains the discretion to deny a

request." *Bellevue,* 634 F.3d at 563. Indeed, "Congress gave the federal district courts

broad discretion to determine whether, and to what extent, to honor a request for

assistance under 28 U.S.C. § 1782." *Four Pillars Enters. Co. v. Avery Dennison Corp.,*

308 F.3d 1075, 1078 (9th Cir. 2002). In *Intel*, the Supreme Court identified four

"factors that bear consideration in ruling on a § 1782(a) request[:]"

1. Whether "the person from whom discovery is sought is a participant in the foreign proceeding";
2. "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
3. Whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States";
4. Whether the request is "unduly intrusive or burdensome."

*Intel*, 542 U.S. 264-65. Courts generally consider all four *Intel* factors, but the weight

of one factor alone is sufficient to deny a Section 1782 application. *See In re Fischer*

*Advanced Composite Components AG*, 2008 WL 5210839, at *3 (W.D. Wash. Dec. 11,

conclude that Joseph Margulies, Zubaydah's attorney and co-petitioner on the

application, meets the "interested person" standard. *See Intel*, 542 U.S. at 256-57.

UNITED STATES' STATEMENT OF INTEREST - 9

2008). This case presents a situation in which the Government's significant interests in the third factor justify denial of the application, as Zubaydah seeks "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, U.S. at 265.

Here, where the Executive and Legislative Branches have ratified a treaty, to which Poland has agreed, that enables Poland to obtain evidence within the United States for its criminal investigations, Zubaydah should not be permitted to use Section 1782 to circumvent it. The United States Central Authority has denied Poland's repeated MLAT requests for assistance in connection with its pending criminal investigation regarding alleged CIA activities, and Section 1782 should not be utilized as a judicial appeal mechanism for private parties to seek, purportedly for the use by foreign governments, U.S. Government information allegedly in the possession of Government contractors that foreign governments were unable to obtain directly through a request to the United States in accordance with a governing treaty. Use of Section 1782 in this fashion is contrary to the purpose and policy goals underlying the statute and the MLAT. Further, the Court should not set an adverse precedent that would encourage other litigants to utilize Section 1782 as a way to circumvent established treaty procedures that the United States relies upon to provide judicial assistance directly to foreign governments.

Notably, Zubaydah does not cite any authority to support his proposed use of Section 1782. Indeed, courts have rejected similar attempts by alleged victims of foreign crimes to use Section 1782 to act as private investigators on behalf of foreign

UNITED STATES' STATEMENT OF INTEREST - 10

governments to circumvent MLATs.  In *Matter of Application of O2CNI Co., Ltd.*, 2013 WL 4442288 (N.D. Cal. Aug. 15, 2013), the court denied a Section 1782 application by a South Korean company based on the *Intel* factors and concluded that the corporation was seeking to evade the MLAT process.  *See id.* at *6-9.  The court remarked that the case presented an "unusual effort" by a private corporation to act as "an investigator for the Korean authorities."  *Id.* at 6.  The Court emphasized that the proper course was for the South Korean Government to seek information for its criminal investigation directly through the MLAT between the United States and South Korea.  *Id.* at *6, 8 ("O2CNI wants to act as investigator for the Korean authorities against the entities that it wants the Korean authorities to charge.  If Korean authorities want more information from the respondents, they can use the MLAT process. . . .")

Similarly, in *Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 112 (D.D.C. 2011), a private party filed an application under Section 1782 in order to provide evidence to Greek investigative authorities for purposes of a criminal prosecution in Greece.  In denying the application based on *Intel*'s discretionary factors, the court relied upon the fact that the Greek government could seek evidence located within the United States by issuing letters rogatory or by submitting a request through the U.S.-Greece MLAT.  *Id*. at 115.

Other courts have also recognized that Section 1782 should not be utilized as a way to circumvent established methods of fact-gathering available to foreign litigants. *See Al Fayed v. United States*, 210 F.3d 421, 423-25 (4th Cir. 2000) (affirming denial of Section 1782 application and noting attempt to sidestep the Freedom of Information

Act); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999)

(rejecting a Section 1782 application that attempted to circumvent an arbitration

agreement, concluding that "[r]esort to § 1782 in the teeth of [an arbitration agreement]

suggests a party's attempt to manipulate United States court processes for tactical

advantage"); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1042

(N.D. Cal. 2016) (concluding that the petitioner's effort to use Section 1782 "to do an

end run around" existing procedures for evidence collection in South Korea creates

"real concerns" that "weigh against granting the applications"); *In re Application of

OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign

Proceeding*, 2009 WL 3335608, at *10 (S.D.N.Y. Oct. 15, 2009) ("Put simply, this

Court would not provide 'efficient means of assistance' to litigants by giving parties an

incentive, after losing in their original requests for information in the foreign tribunal, to

rush to the United States in hopes of obtaining a second bite at the apple. . . . [O]rdering

the discovery would not encourage foreign countries by example, unless that example is

to aid litigants in circumventing the judicial systems of foreign countries.").[4]

---

[4] Although some courts have granted Section 1782 applications in the context of foreign

criminal proceedings, those cases involved different situations in which the applicant

was a foreign defendant, not a non-litigant seeking to act as a proxy for a foreign

government, *see Weber v. Finker*, 554 F.3d 1379 (11th Cir. 2009), or did not raise

concerns about circumventing the MLAT process, *see In re Application for an Order*

Indeed, it is well established that MLATs provide a means by which governments exchange information for purposes of international criminal investigations and private parties, such as Zubaydah, cannot enforce MLATs or compel the Government to invoke MLATs on their behalf. *See, e.g., United States v. Sedaghaty*, 728 F.3d 885, 917 (9th Cir. 2013); *United Kingdom v. United States*, 238 F.3d 1312, 1317 (11th Cir. 2001). The corollary is also true: private parties should not be permitted to seek disclosure of U.S. Government information purportedly on behalf of a foreign government that the foreign government could not itself obtain through an MLAT request. *Cf. Bellevue*, 634 F.3d at 571 (holding that U.S.-Russia MLAT supersedes substantive aspects of Section 1782). Otherwise, Section 1782 would be transformed into a judicial appeal mechanism for private parties, acting purportedly on behalf of foreign governments, to seek judicial review of the Executive Branch's MLAT denials. *Cf. In re Request from United Kingdom Pursuant to Treaty Between Gov't of U.S. & Gov't of United Kingdom on Mut. Assistance in Criminal Matters in the Matter of Dolours Price*, 685 F.3d 1, 9 (1st Cir. 2012) ("a federal court has no subject matter jurisdiction to entertain a claim for judicial review of the Attorney General's actions pursuant to the [MLAT].").

Here, the United States and Poland have agreed in the MLAT to provide a variety of forms of assistance to each other in connection with the investigation and prosecution of criminal acts, except where there is a basis in the treaty to deny the request for

---

*Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 457 (2d Cir. 2014).

assistance.  The United States has denied Poland's requests for assistance with its criminal investigation in accordance with the provisions of the treaty.  *See Zubaydah* ¶¶ 132, 143; Warden Decl., Ex. 3 at 17-19.  This decision represents the considered judgment of the Executive Branch made under treaty terms approved by the Senate, to which Poland has agreed.  Accordingly, there is no basis for the Court to extend its discretionary assistance to Zubaydah under Section 1782 when doing so would circumvent the law and policies embedded in the MLAT, as approved and implemented by the Executive and Legislative Branches of the United States.

Even if the Court considers the other *Intel* factors, those factors also favor denial of Zubaydah's application.  As to the first factor – whether "the person from whom discovery is sought is a participant in the foreign proceeding" – the Supreme Court has explained that the need for Section 1782 aid is "not as apparent" when the evidence is available to the foreign tribunal.  *See Intel*, 542 U.S. at 264.  Although Dr. Mitchell and Dr. Jessen are not formal "participants" in the underlying Polish criminal investigation, the MLAT provides the Government of Poland with a legal procedure through which it can request documents and testimony from them, through the United States.  *See O2CNI Co.*, 2013 WL 4442288 at *6 (first *Intel* factor "weighs in favor of letting the evidence in th[e] case develop through the criminal authorities investigating it").  *Cf. In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015) ("Although the case law at times refers to whether the 'person' is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through the foreign proceeding.").  Consequently,

this case does not present a situation in which Poland is without legal recourse to seek information from the United States for its investigation absent Section 1782 aid.

Moreover, it bears emphasizing that the alleged information sought in this case is *U.S. Government information* that Dr. Mitchell and Jessen allegedly acquired while working as contractors for the CIA. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 85 (2d Cir. 2004) (concluding that a Section 1782 application should be evaluated from the perspective of the entity that owns the information). Indeed, any issue over access to such alleged information is between the United States and Poland. Accordingly, the Court should to defer to the MLAT and other traditional diplomatic processes available to resolve this government-to-government matter, rather than inject itself into the issue of Poland's access to alleged U.S. Government information through Zubaydah's private litigation effort against Dr. Mitchell and Dr. Jessen. *Cf. Patterson v. Wagner*, 785 F.3d 1277, 1285 (9th Cir. 2015) (treaties "establish a diplomatic conflict resolution scheme with no role for the judiciary"); *Mitchell v. Laird*, 488 F.2d 611, 616 (D.C. Cir. 1973) (courts should respect "the delicacies of diplomatic negotiation" and "the inevitable bargaining for the best solution of an international conflict").

As to the second factor, the nature and status of the ongoing criminal investigative proceedings in Poland weigh against granting Zubaydah's application. Poland has sought legal assistance from the United States in accordance with the MLAT process on multiple occasions, and those requests have all been denied. Thus, regardless whether Poland supports Zubaydah's effort to circumvent those prior decisions, the Court should not exercise its discretionary authority in a manner that

would conflict with the decision of the Executive Branch as to the appropriate manner in which alleged U.S. Government information, even if in the possession of Government contractors, is provided to foreign governments for the purpose of foreign criminal investigations.

The final *Intel* factor also favors denial of Zubaydah's application because the subpoena is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264. Zubaydah's proposed subpoenas are very broad in scope, as they seek "all documents, memoranda, and correspondence" as well as deposition testimony in 13 expansive categories related to alleged CIA detention and interrogation activities in Poland. *See* Application (ECF No. 1), Ex. 1-4. The categories include alleged correspondence between U.S. and Polish officials, documents allegedly generated by Polish officials, and go so far as to include information about water and electricity systems in Poland. *See id.* In effect, Zubaydah wants this Court to adjudicate whether Polish prosecutors should have access to alleged U.S Government information as well as information allegedly created by, or related to the activities of, other components of the Polish Government. This is a matter for the Polish Government to resolve internally and through its diplomatic discussions with the United States. Section 1782 is not a device for fishing expeditions by private parties purporting to act as private investigators for foreign governments. *See United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n*, 235 F.3d 1200, 1205-06 (9th Cir. 2000).

Further, because Zubaydah seeks alleged intelligence and foreign relations information, the United States would, in all likelihood, have to expend substantial

UNITED STATES' STATEMENT OF INTEREST - 16

resources as part of the rigorous process necessary to evaluate and obtain approval to assert potential privileges, including the state secrets privilege. As this Court is aware, the complex discovery process and litigation in the *Salim* and *Mitchell* cases was time-consuming, burdensome, and ultimately culminated in the Court upholding the United States' assertion of the state secrets privilege. *See Mitchell*, Order Re: Third and Fourth Motions To Compel (ECF No 91). Without confirming or denying whether or not responsive records exist, should Zubaydah's subpoenas issue, this case would likely involve a substantial commitment of time and resources by the United States, including at the highest levels of the CIA and Department of Justice, to address any potential privilege issues. The burden on the United States associated with litigating access to alleged national security and foreign relations information weighs in favor of denying Zubaydah's application. *See Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 623-24 (8th Cir. 2016) (sensitive information sought in Section 1782 application "weighed heavily against ordering discovery"); *Al Fayed*, 210 F.3d at 425 ("Congress's salutary purposes in enacting § 1782 simply do not anticipate the issuance of a subpoena for documents whose disclosure would be likely to harm the national security.").

In addition, Zubaydah's application would disserve Section 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252. The first aim, providing efficient assistance, would not be furthered because it is more efficient to allow Poland, the entity actually conducting the criminal investigation, to attempt to collect the evidence that it believes it needs directly from the

UNITED STATES' STATEMENT OF INTEREST - 17

United States using the established procedures that Poland has agreed to under the MLAT.  Allowing Zubaydah to rely upon Section 1782 in the fashion he proposes would conflict with this well-established treaty scheme.

The second aim of Section 1782, to encourage foreign countries to provide similar assistance to U.S. courts, also would not be served by granting Zubaydah's application.  It is unlikely that granting the application here would set an example that would encourage other foreign governments to grant similar assistance to U.S. litigants seeking sensitive intelligence information in foreign courts.  *See Al Fayed*, 210 F.3d at 424.  Moreover, Zubaydah's application undermines the interests of international comity and parity by encouraging other governments to circumvent established government-to-government methods of obtaining evidence for foreign criminal investigations and to seek evidence through indirect private proxies in U.S. courts.  Rather than further international cooperation, granting the application here would create a troubling precedent incentivizing parties to contravene the MLAT process and disturb the very structure of international agreements established to facilitate foreign evidence gathering in criminal investigations.  Such a result would effectively grant foreign law enforcement, acting through private proxies, a means to circumvent the MLAT process with which the United States is obliged to comply.  This result has the potential to harm, not promote, foreign relations in the context of international criminal matters.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    If The Court Grants Zubaydah's Application, It Should Establish A Schedule That Provides the United States With Sufficient Time To Assert Any Applicable Privileges.

In the event the Court authorizes Zubaydah to serve his discovery subpoenas on Dr. Mitchell and Dr. Jessen, the United States requests that the Court set a return date for the subpoenas at least 60 days after service in order to provide the United States sufficient time to consider whether to assert any applicable privileges over the alleged information, including potentially the state secrets privilege, and to file any appropriate motions with the Court. *See In re Application of Rainsy*, 2017 WL 528476, at *3 (N.D. Cal. Feb. 9, 2017) (conditioning grant of Section 1782 subpoena application on extended return date to provide party with sufficient time to contest subpoena).

Section 1782 provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  Here, the United States has a compelling interest in protecting its classified, sensitive, or privileged information from disclosure, which includes preventing Dr. Mitchell and Dr. Jessen from confirming or denying allegations that would tend to disclose classified information. *See, e.g., Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988); *Minier v. CIA*, 88 F.3d 796, 800-02 (9th Cir. 1996).

Given the potential sensitivity of the alleged diplomatic and intelligence information that Zubaydah seeks in this case, the United States requests that the Court establish a return date for the subpoenas at least 60 days from the date of service to enable the United States to confer with counsel for Dr. Mitchell and Dr. Jessen and engage in the necessary intra- and inter-agency consultations to determine whether to

UNITED STATES' STATEMENT OF INTEREST - 19

assert the state secrets privilege and present any appropriate motions to the Court. This request is not intended to prejudice any party, or to unnecessarily delay resolution of this case. Indeed, Zubaydah will not be prejudiced by this proposed date. The criminal investigation in Poland has been ongoing since 2008 and it has been extended multiple times. *See* Warden Decl., Ex. 3 at 3. Accordingly, there is no need for expedited resolution of these potential privilege issues.

By contrast, the invocation of the state secrets privilege is no ordinary or simple occurrence. The process for assessing whether the state secrets privilege can and should formally be invoked serves to ensure protection of the public's interest in national security, while at the same time avoiding the need for a rushed or less rigorous decision that could have lasting prejudicial effect on a litigant. *United States v. Reynolds*, 345 U.S. 1 (1953), its progeny, and current Executive Branch policy demand that any determination as to whether the United States will invoke the state secrets privilege can be made only by senior officials of the Executive Branch after their personal consideration. *See Mitchell* (ECF No. 91) at 4-8. These multiple layers of review are meticulous and take a significant amount of time.

Accordingly, the requested 60-day return date is reasonable given the need to make a decision as to whether the invocation of the state secrets privilege is appropriate and to give senior officials appropriate time to consider the national security and diplomatic issues presented in this case. A 60-day return period will also provide flexibility to avoid time and resource conflicts with the pre-trial deadlines and trial schedule the Court has established in the *Salim* case. *See Salim* Order (ECF No. 187).

UNITED STATES' STATEMENT OF INTEREST - 20

Dated:  June 30, 2017                     Respectfully submitted,

                                          CHAD A. READLER
                                          Acting Assistant Attorney General

                                          JOSEPH H. HARRINGTON
                                          Acting United States Attorney

                                          TERRY M. HENRY
                                          Assistant Branch Director

                                              *s/ Andrew I. Warden*
                                          ANDREW I. WARDEN
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Avenue NW
                                          Washington, D.C. 20530
                                          Tel: (202) 616-5084
                                          Fax: (202) 616-8470
                                          E-Mail: andrew.warden@usdoj.gov

                                          Attorneys for the United States of America

UNITED STATES' STATEMENT OF INTEREST

1

2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 30, 2017, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such

filing to the following:

Jerry Moberg:
jmoberg@jmlawps.com

David Klein:
David.Klein@pillsburylaw.com

John Chamberlain:
John.Chamberlain@pillsburylaw.com

*Attorneys for Petitioners*

<u>*/s/ Andrew I. Warden*</u>
ANDREW I. WARDEN
Indiana Bar No. 23840-49
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Tel: (202) 616-5084
Fax: (202) 616-8470
E-Mail: andrew.warden@usdoj.gov

Attorney for the United States of America

UNITED STATES' STATEMENT OF INTEREST