**JERRY MOBERG & ASSOCIATES**
Jerry Moberg
jmoberg@jmlawps.com
124 Third Avenue, SW
Ephrata, WA 98823
(509) 754-2356

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
David Klein
david.klein@pillsburylaw.com
John Chamberlain
john.chamberlain@pillsburylaw.com
1200 Seventeenth Street, NW
Washington, DC 20036
(202) 663-8000

*Attorneys for Petitioners*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re Application of ZAYN AL-ABIDIN MUHAMMAD HUSAYN (Abu Zubaydah) and JOSEPH MARGULIES,<br><br>               Petitioners | Case No. 2:17-cv-00171-JLQ<br><br>**RESPONSE TO THE UNITED STATES' STATEMENT OF INTEREST** |

       Petitioners Zayn Al-Abidin Muhammad Husayn ("Abu Zubaydah") and Joseph Margulies have applied to this Court pursuant to 28 U.S.C. § 1782 for an order permitting them to serve subpoenas on Respondents Mitchell and Jessen, two private citizens who are former CIA contractors with personal knowledge relevant to an

ongoing Polish criminal investigation into crimes perpetrated against Abu Zubaydah on Polish soil.  The Government's Statement of Interest (ECF No. 11) is, in fact, an affirmative opposition to this Application.  Construed as such, it is premature and without merit.

The Government argues that Petitioners' Application should be denied under the Supreme Court's *Intel* factors because it allegedly "seeks 'to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'" ECF No. 11 at 10, (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004)).  The Government claims, without support, that Petitioners are acting as proxies of the Polish government and attempting to exploit Section 1782 to circumvent treaty procedures for the sharing of information between nations.  ECF No. 11 at 13. The Government argues in the alternative that the subpoenas would be unduly burdensome – not to Respondents, to whom the proposed subpoenas are directed, but to the Government itself.  *Id.* at 16-17. The Government also requests that, if the Court grants the Application, the Court set a 60-day return date for Petitioners' proposed subpoenas. *Id.* at 19-20.

Contrary to the Government's assertions, Petitioners come to this Court as private individuals seeking to vindicate individual rights, not as agents of the Polish Government.  Abu Zubaydah, not the Polish Government, is the individual who has

been wronged. He has a right under Polish law to give evidence to aid the investigation of crimes that were committed against him. The Application was submitted in furtherance of that right. The rights of the Polish Government under the MLAT are separate and distinct from the rights asserted by Petitioners before this Court. One does not control the other, and courts repeatedly have granted private-party Section 1782 applications, even where an MLAT provided some foreign government a distinct avenue for securing the same evidence. In effect, the Government's position is that a district court assessing a Section 1782 application must defer to the executive branch's unreviewable judgment in completely separate treaty proceedings – an untenable arrangement that would encroach on the judiciary's independence.

The Government's assertions of undue burden are premature, speculative, and improper. The proposed subpoenas are directed to Respondents, not to the Government. A tangential burden on the Government is not grounds for denying a request to issue subpoenas to private individuals, and the Government cannot assert an undue burden on Respondents' behalf. In any event, the Government has not followed the legally-prescribed procedures for identifying information as privileged (including purported state secrets) and applying to the court for its protection.

Petitioners oppose the Government's request for a 60-day return date. The Government already has been afforded 30 days to file a Statement of Interest, which triggered the necessity of this response. An additional 60-day delay, followed by likely motions practice, would unduly prejudice Petitioners' interest in the investigation in Poland. Furthermore, though couched as a "Statement of Interest," the Government's filing is, in fact, an opposition to the issuance of the subpoenas, which clearly stakes out an adverse position. The Government does not require 60 days to develop the argument it has already amplified in its Statement of Interest.[1]

## BACKGROUND

Abu Zubaydah was captured in Pakistan in 2002, detained and tortured at various CIA black sites over the ensuing years, and then transferred to Guantanamo Bay, Cuba in 2006, where he remains incarcerated to this day without ever having been charged with a crime.[2] Although the Government's brief asserts that he is a "terrorist leader who was a longtime ally of Osama bin Laden, operated terrorist

---

[1] Similarly, Respondents were served with Petitioners' Application on the day it was filed, and would not be prejudiced by an earlier return date.

[2] Abu Zubaydah's detention and interrogation are described in detail in the Declaration of Joseph Margulies, filed with Petitioners' Application. ECF No. 2.

training camps in Afghanistan and led a force that engaged in hostilities against U.S. and Coalition Forces" (ECF No. 11 at 4, quotation marks omitted), the Government's only support for these allegations consists of dicta in two judicial opinions from cases in which Abu Zubaydah was not a party, and no party contested those allegations.[3] In fact, as the Government well knows, an exhaustive report by the Senate Select Intelligence Committee concluded that similar allegations about Abu Zubaydah's alleged connection to Osama bin Laden and al Qaeda were unfounded, based on a comprehensive review of contemporaneous CIA records. *See* Declaration of John Chamberlain, Ex. A at 410-11 (Excerpts from SSCI Report).

Regardless of the accuracy of the Government's allegations, it is Abu Zubaydah's status as the victim of crimes – not their alleged perpetrator – that brings him before this Court. After a determination by the European Court of Human Rights that Abu Zubaydah had been the victim of human rights violations on Polish

---

[3] *See Ali v. Obama*, 736 F.3d 542, 544 (D.C. Cir. 2013) ("Ali was with an al Qaeda-associated terrorist leader named Abu Zubaydah …. That much is undisputed.") *Barhoumi v. Obama*, 609 F.3d 416, 423 (D.C. Cir. 2010) ("Barhoumi [does not] dispute that Zubaydah's militia qualifies as an 'associated force' that engaged in hostilities against U.S. or coalition forces.").

RESPONSE TO U.S. STATEMENT
OF INTEREST                    -5-

soil, Poland renewed its investigation of those violations, seeking to hold the perpetrators who are Polish nationals accountable. As victim of the crimes under investigation, Abu Zubaydah has the right under Polish law to give evidence, to appeal a decision not to prosecute, and to appeal an adverse judgment. Declaration of Bartłomiej Jankowski ¶¶ 2-3. Because his captor, the Government, generally forbids him to communicate with the outside world, Abu Zubaydah is severely limited in his ability to give evidence; he cannot, for instance, give oral testimony, as a crime victim ordinarily would. *See* ECF No. 12-3 at 17 (describing Poland's request for Abu Zubaydah's oral testimony); *id.* at 18 (describing United States' denial of this and other requests for aid). Instead, Abu Zubaydah relies on his attorneys, including Petitioner Margulies, to vindicate his right to provide evidence to Polish investigators to ensure a full and complete investigation, albeit subject to the limitations placed on Margulies by the conditions of his representation. Petitioners' Application seeks this Court's assistance in that effort.

## LEGAL STANDARD

The Government concedes that Petitioner Abu Zubaydah meets the threshold requirements for Section 1782 relief (ECF No. 11 at 8), but urges the Court to exercise its discretion to deny the Application based on the factors outlined by the Supreme Court in *Intel*. As summarized by the Ninth Circuit, those factors are:

[1] [W]hether "the person from whom discovery is sought is a participant in the foreign proceeding"; [2] "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; [3] whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; [4] and whether the request is "unduly intrusive or burdensome."

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (quoting *Intel*, 542 U.S. at 264-65) (brackets inserted).

The Government claims that the first three factors cut against granting the application for substantially the same reason: because Petitioners are allegedly acting as proxies of Poland to acquire information Poland cannot acquire itself through a treaty request. ECF No. 11 at 10-16. Petitioners address these contentions in Sections I and II of their argument, *infra*. The Government also asserts that the fourth factor cuts against granting the application because the request is unduly burdensome on the Government. ECF No. 11 at 16-17. Petitioners address this argument in Section III, *infra*.

## ARGUMENT

**I.      Petitioners' Rights Under Polish Law and Section 1782 Are Not Co-Extensive with Poland's Rights under the MLAT, and the Government's Position on Treaty Requests Is Irrelevant to the Application.**

Petitioners are not the Polish Government. They are not acting on behalf of the Polish Government. They are acting to vindicate their own interests, which are self-

evident. The Government's contrary assertion is wholly unsupported. Petitioners have no standing, as private citizens, to request information from the Government under any treaty. However, Section 1782 grants any "interested person," including Petitioners, the right to petition a district court for a discovery order to obtain evidence "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). The Government concedes that Abu Zubaydah is an "interested person" under the statute, and that Polish law grants him particular rights in the pending Polish criminal investigation.[4] ECF No. 11 at 8. It is thus undisputed that Section 1782 is intended to benefit persons in Abu Zubaydah's position.

The Government's argument confounds Petitioners with the Polish Government and one procedure for another. By its own terms, the U.S.-Poland MLAT is "intended solely for mutual legal assistance between the Parties [Poland and the U.S]," and does not "give rise to a right on the part of any private person to

---

[4] Because Abu Zubaydah is detained incommunicado, Petitioner Margulies acts as his agent and is thus also an "interested person" under the statute. *Cf. In re Schlich*, 2016 WL 7209565, at *3 (D. Mass. Dec. 9, 2016) (patent attorney acting as agent for real party in interest qualified as "interested person" under Section 1782).

obtain, suppress, or exclude any evidence." U.S.-Poland MLAT, 1996 WL 905552, Art. 1(4). The Government itself contends that "private parties, such as Zubaydah, cannot enforce MLATs or compel the Government to invoke MLATs on their behalf." ECF No. 11 at 13.

Because of the differences in the two evidentiary devices and their intended beneficiaries, courts have recognized that private individuals may avail themselves of Section 1782 even if the nation in which the foreign proceeding is located could theoretically seek the same information through an MLAT request. For instance, in *Weber v. Finker*, 554 F.3d 1379 (11th Cir. 2009), the Section 1782 applicant was a defendant in Swiss criminal proceedings and a plaintiff in Cypriot civil proceedings who sought information pertinent to both actions. After the district court granted the application in part, respondents argued on appeal that the applicant should have brought her request under the U.S.-Swiss MLAT rather than Section 1782. *Id.* at 1382-83.

Assuming, without deciding, that a private individual could bring a request under the MLAT (*id.* at n.2), the Eleventh Circuit rejected respondents' argument:

> Whereas § 1782 specifically provides that "any interested person" may apply to a United States district court for foreign discovery assistance, the U.S.–Switzerland MLAT is a treaty between States Parties. All of the language in the treaty speaks to facilitating discovery for the "Contracting Parties" or "Contracting States," namely, the United States and Switzerland.

*Id.* at 1383 (citation omitted). The existence of the MLAT did not displace the applicant's Section 1782 rights. *Id.*; *accord Absolute Activist Value Master Fund Ltd. v. Devine*, 2017 WL 991476, at *3 (M.D. Fla. Mar. 15, 2017) ("[B]ecause plaintiffs are private third-parties, and not a contracting state or a prosecutor from a contracting state, there's no indication that plaintiffs are required to use the MLAT to receive information.")

Nor does the fact that the Government has rejected Polish MLAT requests diminish Petitioners' rights under Section 1782. To the contrary, the Government's position on Poland's request has no bearing on Petitioners' Application. In *Ex Parte Application of Jommi*, the applicant, a criminal complainant in Swiss proceedings, sought prosecution of an anonymous internet user who had posted allegedly defamatory statements about her. 2013 WL 6058201, at *1 (N.D. Cal. Nov. 15, 2013). The Swiss prosecutor was forced to suspend investigation because critical evidence (the identity of the anonymous user) was located in the U.S., and it was "not possible to file a request to an international rogatory commission, because the United States does not grant assistance for [such offenses]." *Id.* at *1-2. To break this impasse, the applicant sought leave under Section 1782 to serve subpoenas on U.S. companies that possessed the identifying information. *Id.*

RESPONSE TO U.S. STATEMENT
OF INTEREST                         -10-

Applying the *Intel* discretionary factors, the court granted this relief. There, as here, the U.S. companies were not parties to the foreign proceeding at issue; the foreign government was receptive to federal court assistance; the information sought was "critical to the investigation"; and there was "nothing to suggest that Petitioner's § 1782 request is an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at *4. And even though the U.S. would not provide the same evidence through a treaty request (apparently as a matter of policy), the court never suggested the application was an attempt to "circumvent" that policy. *Id.* There have been numerous other cases in which federal courts have granted Section 1782 applications by private petitioners notwithstanding the existence of MLATS. *See, e.g., In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456 (2d Cir. 2014) (granting Section 1782 application of complainant in Swiss criminal proceedings); *In re Gianasso*, 2012 WL 651647 (N.D. Cal. Feb. 28, 2012) (same); *Medeiros v. Int'l Game Tech.*, 2016 WL 1611591 (D. Nev. Apr. 22, 2016) (granting Section 1782 application of criminal defendant in Brazilian proceedings, despite the existence (not mentioned by the court) of a U.S.-Brazil MLAT (2001 WL 36952563)).

The result in *Jommi* was correct. The Government's responses to international treaty requests are irrelevant to foreign litigants who are not party to those treaties, or on federal courts adjudicating those litigants' Section 1782 requests. If, by rejecting treaty requests for particular kinds of evidence, the executive could dictate the judicial relief available to foreign litigants, the Government would gain an unreviewable right to preempt judicial discretion under Section 1782. The Ninth Circuit has previously rejected the Government's position that its approval of an MLAT request deprived the court of discretion to deny a request under Section 1782, since it "leads to the inescapable and unacceptable conclusion that the executive branch, and not the judicial branch, would exercise judicial power." *In re Premises Located at 840 140th Ave. NE*, 634 F.3d at 572. For the same reason, this Court should hold that the Government's denial of a foreign state's MLAT request does not preempt the Court's discretion to grant a private party relief under Section 1782.

*Jommi* should be followed here. Petitioners have interests and rights in the Polish investigation that are separate and distinct from Poland's own interest in the investigation and Poland's rights under the MLAT. As in *Jommi*, Respondents are not parties to the foreign proceeding at issue. And as in *Jommi*, the evidence sought is critical to the ongoing investigation, and cannot be obtained through requests to the executive branch. The Government's denial of treaty requests – under a treaty to

which Petitioners are not parties – does not diminish Petitioners' rights, and does not provide a proper basis for the Court to deny Petitioners' Application.

## II. The Authorities Advanced by the Government Are Inapposite.

Although the Government cites a number of cases in which Section 1782 applications were denied, those cases are all distinguishable on their facts. ECF No. 11 at 11-12. The Government relies primarily on two cases: *Matter of Application of O2CNI Co., Ltd.*, 2013 WL 4442288 (N.D. Cal. Aug. 15, 2013), and *Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 114 (D.D.C. 2011).

In *O2CNI*, the applicant was a corporate complainant in a South Korean criminal investigation. 2013 WL 4442288 at *3. The applicant sought leave to serve document requests on two potential targets of that investigation, who had declined to cooperate voluntarily with Korean authorities. *Id.* at *2-3. Although the applicant met the threshold requirements of Section 1782, the court exercised its discretion to deny the application, primarily because of concerns with the propriety of ordering potential defendants in a foreign criminal proceeding to produce evidence against themselves. *Id.* at *5. The court noted that "*this is more than a subpoena directed to a third party with relevant information.*" *Id.* at *6 (emphasis added). Because the respondents were themselves putative defendants in the foreign proceeding, the first *Intel* factor cut against granting the application. Additionally, the court noted that the

MLAT process, which was available to the Korean authorities, "provides safeguards appropriate to a criminal case *when the evidence is sought from the suspects themselves.*" *Id.* at *8 (emphasis added).

Here, Respondents are not defendants or potential defendants in the Polish criminal investigation, but are instead "third part[ies] with relevant information." *Id.* at *6. The concerns animating the court's decision in *O2CNI* are absent.

*Lazarides* is also inapposite. There, the court denied a 99-page application submitted by a *pro se* applicant, who purportedly sought information about himself for use in a Greek criminal prosecution. *Lazaridis*, 760 F. Supp. 2d at 111 & n.1 Although the court cited the failure of Greek authorities to invoke the U.S.-Greek MLAT as one factor cutting against granting the application, *id.* at 114-15 (a factor that cuts the other way here), the court expressed skepticism of the application's propriety on numerous other grounds. The applicant was unable to present reliable evidence that he was actually an "interested person" in the prosecution (a factor the Government concedes here), and the court questioned the authenticity of the evidence he did present. *Id.* at 113. The applicant's document requests included an "invented term" – Not-Missing Child – that the respondents would be unduly burdened if they were inquired to interpret in responding to those requests. *Id.* at 115. Additionally, the applicant's "wide ranging request" suggested that he was "seeking information

more for his general use than for use by the Greek tribunals in their investigation or prosecution of specific criminal acts." *Id.* In sum, *Lazaridis* was a case of a *pro se* litigant bringing a badly deficient application for an improper purpose; it should not be read as persuasive authority for a rule that the presence of an MLAT cuts against granting a private party's Section 1782 application.

The Government also cites several cases in which applicants sought to circumvent established evidentiary restrictions. ECF No. 11 at 11-12. *Al Fayed v. United States*, 210 F.3d 421, 423 (4th Cir. 2000) (denying application for information applicant previously sought through a denied FOIA request); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 881 (5th Cir. 1999) (holding that Section 1782 relief is not available in aid of international arbitration); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1034 (N.D. Cal. 2016) (denying application that sought to circumvent foreign whistle-blower protections, where foreign tribunal opposed the application as amicus curiae); *In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, 2009 WL 3335608, at *4 (S.D.N.Y. Oct. 15, 2009) (denying application filed "one week after [the applicant's] attempt to compel discovery was rejected by" the foreign tribunal).

In contrast to these cases, Petitioners do not seek to circumvent restrictions placed on them by a foreign tribunal, and are not seeking a "second bite of the apple."

The Application is Petitioners' first attempt to obtain evidence from Respondents Mitchell and Jessen – an effort separate and distinct from the Polish Government's requests under the MLAT, which, to the best of Petitioners' knowledge, did not request testimony or documents from Respondents. The Government's cited cases, therefore, provide little guidance.

**III. The Government's Claim of Undue Burden is Premature, Speculative, and Improper.**

Petitioners' proposed subpoenas seek documents and testimony from Respondents Mitchell and Jessen, not from the Government. Nonetheless, the Government claims that the subpoenas would impose an undue burden on the Government, purportedly because the subpoenas seek "U.S. Government information that Dr. Mitchell and Jessen allegedly acquired while working as contractors for the CIA." ECF No. 11 at 15 (emphasis omitted).

The Government cites no authority for the proposition that the Court should consider a possible tangential burden on the Government under *Intel* when the Government itself is not a respondent. It is true that in federal civil practice, a party other than the recipient of a subpoena may seek protection from that subpoena under certain circumstances, including where the party has a protected interest or privilege in the information sought. *See In re REMEC, Inc. Sec. Litig.,* 2008 WL 2282647 at *1 (S.D. Cal. May 30, 2008) ("As a general proposition, a party lacks standing under

Federal Rules [sic] of Civil Procedure Rule 45(c)(3) to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena"). However, the proper vehicle for challenging a subpoena under such circumstances is a motion to quash or motion for protective order, in which the movant bears the burden of proving its entitlement to protection. *Cf. Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash.").

In contrast, the Government's Statement of Interest is not a proper vehicle for dispositive opposition to the Application even on the grounds of Government privilege, especially since the Government has made no showing that the particular information sought by the Application is classified, privileged, or otherwise protected from disclosure in a way that would impose an undue burden on the Government. The Government offers only the speculative assertion that it would, "in all likelihood, have to expend substantial resources" to "evaluate and obtain approval to assert potential privileges" over the material – that may or may not exist – sought by the

subpoenas. [5] ECF No. 11. at 16-17.  Of course, the demands of justice require some expenditure of resources.  But this equivocal allegation of burden should not move the Court to deny Petitioners' Application. In substance, the Government asks the Court to relieve it, not only of the potential burden of protecting privileged matter, but also to remove its threshold burden of showing it is entitled to such relief in the first place.

If the Government wishes to assert one or more privileges over the information sought in the subpoenas if and when they issue, it of course may do so, but the Court should not defer to the Government's bare assertion that the subpoenas seek "alleged intelligence and foreign relations information" that would be onerous to protect. ECF No. 11 at 16-17. The Government raises the specter of an assertion of state secrets privilege. *Id.*  But invocation of the state secrets privilege requires "a formal claim of privilege, lodged by the head of the department which has control over the matter,

---

[5] The Government also appeals to this Court's personal knowledge of the discovery process in *Salim v. Mitchell* and the related subpoena litigation. ECF No. 11 at 17. Even if this unusual request for quasi-judicial notice were proper, the information that was at issue in the *Salim* discovery disputes is different from the information Petitioners seek here.

after actual personal consideration by the officer." *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1080 (9th Cir. 2010) (en banc). Even after that requirement is met, a court must satisfy itself that the information is actually privileged, and then determine how the matter should proceed. *Id.* If the Government could acquire the same relief merely by complaining that a subpoena *might* trigger these requirements, the requirements would have no meaning.

Finally, even if the Government could show an undue burden, the proper course would not be to deny Petitioners' Application in its entirety. "[U]nduly intrusive or burdensome requests may be rejected *or trimmed*." *Intel*, 542 U.S. at 245 (emphasis added). If, in the context of a properly-filed motion to quash, the Court determines that the Petitioners' proposed subpoenas are overbroad, Petitioners will seek leave to amend them to alleviate the Court's concerns.

## IV. Petitioners Oppose a 60-Day Return Period for the Subpoenas.

The Government requests the Court set a return date for the subpoenas of "at least 60 days after service in order to provide the United States with sufficient time to consider whether to assert any applicable privileges over the alleged information [sought], including the state secrets privilege, and to file any appropriate motions with the Court." ECF No. 11 at 19.

Respectfully, Petitioners oppose the Government's request. As the Government notes, Poland's most recent report to the Council of Europe states that the Polish investigation has been extended until September 11, 2017. ECF 12-3 at 22. The investigation has been continued before, and although Petitioners are hopeful that the investigation will be continued beyond September 11, 2017, they cannot be certain that it will be, or if it is, for how long. Accordingly, there is a real risk that Petitioners' Application will be prejudiced by the passage of time if it becomes subject to multiple, lengthy delays.

Petitioners consented to the Government's request for 30 days to file a Statement of Interest. Because that Statement did more than simply justify the Government's intervention, and instead urged the Court to deny Petitioners' Application, Petitioners were required to respond, engendering further delay. If the Court ultimately grants the Application and permits the subpoenas to issue, the Government should not require an additional 60 days to reevaluate the position that it has, in all fairness, already articulated in its Statement of Interest.

## CONCLUSION

For the foregoing reasons, and those set forth in the Application itself, the Court should grant Petitioners' Application.

Respectfully submitted,

Dated: July 21, 2017     s/ *Jerry Moberg*
Jerry Moberg
jmoberg@jmlawps.com
JERRY MOBERG & ASSOCIATES
124 Third Avenue, SW
Ephrata, WA 98823
(509) 754-2356

David Klein
david.klein@pillsburylaw.com
John Chamberlain
john.chamberlain@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
(202) 663-8000

*Attorneys for Petitioners*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Andrew Irvin Warden**
andrew.warden@usdoj.gov

*Attorney for the United States*


s/ *Jerry Moberg*
Jerry Moberg
jmoberg@jmlawps.com
JERRY MOBERG & ASSOCIATES
124 Third Avenue, SW
Ephrata, WA 98823
(509) 754-2356