FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 21, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

In Re Application of ZAYN AL-ABIDIN MUHAMMAD HUSAYN (Abu Zubaydah) and JOSEPH MARGULIES,

    Petitioners.

No. 2:17-CV-0171-JLQ

ORDER RE: MOTION TO QUASH AND MOTION TO INTERVENE

BEFORE THE COURT is the Motion to Intervene (ECF No. 29) and Motion to Quash (ECF No. 30) filed by the United States of America (hereafter "Government"). Petitioners filed a Response (ECF No. 31) to the Motion to Quash, but no response to the Motion to Intervene was filed. The court heard telephonic oral argument on November 28, 2017. Andrew Warden appeared for the Government. John Chamberlain, David Klein, and Jerry Moberg represented the Petitioners. Chris Tompkins appeared for Respondents James Mitchell and John Jessen.

**I. Background and Procedural History**

On May 22, 2017, Petitioners Zayn Al-Abidin Muhammad Husayn ("Abu Zubaydah") and Joseph Margulies filed an "Ex Parte Application for Discovery" (ECF No. 1) pursuant to 28 U.S.C. § 1782, requesting this court to issue subpoenas to James Elmer Mitchell and John Jessen (collectively "Respondents") to produce documents and give testimony for use in an ongoing criminal investigation in Krakow, Poland. Although denominated "ex parte" the Application stated advance notice and a copy of the Application was provided to counsel for Mitchell and Jessen. (ECF No. 1, p. 2).

Petitioner Abu Zubaydah is allegedly detained at Guantanamo Bay, Cuba. Petitioner Joseph Margulies is his attorney. Zubaydah alleges he was detained by the

ORDER - 1

United States Government in March 2002, and has been in U.S. custody ever since. (ECF No. 1, p. 3-4). Relevant to this action, Zubaydah alleges he was detained at various CIA black sites, including at "Detention Site Blue" in Poland, from December 2002 to September 2003. (ECF No. 1, p. 6). Petitioners allege there is an ongoing criminal investigation in Poland into Polish official's alleged complicity in claimed unlawful detention and torture of Zubaydah. (ECF No. 1, p. 6-7). Specifically, Petitioners state: "The Polish criminal investigation is charged with examining whether Polish officials violated domestic law by opening, operating, and conspiring with the United States to detain and mistreat prisoners, including Abu Zubaydah." (*Id*. at 7). Zubaydah alleges he has the right to submit evidence in that matter and claims he has been invited by the Polish prosecutor to do so.

On May 31, 2017, the Government filed a Notice of Potential Participation (ECF No. 7) and requested 30 days to evaluate the matter and determine whether to file a Statement of Interest. On June 30, 2017, the Government filed a Statement of Interest (ECF No. 11) wherein it opposed Petitioners' Application for a Discovery Order pursuant to 28 U.S.C. § 1782. On July 21, 2017, Petitioners filed a Response (ECF No. 16) to the Government's Statement of Interest. Thereafter, on August 4, 2017, Petitioners filed a "Motion for Leave to Serve Subpoenas, or, in the Alternative, to Set Hearing Date." (ECF No. 19). The Motion for Leave argued issuance of the subpoenas is the "beginning of a process" and any objections are properly raised via motion to quash after issuance of the subpoena.

The court granted the Application for Discovery on September 7, 2017. (ECF No.23). A Notice of Appearance (ECF No. 25) on behalf of Respondents was filed on October 16, 2017, but Respondents did not challenge the Application for Discovery nor did they file a motion to quash. The court issued an Order requiring any motion to quash or for protective order be filed no later than October 25, 2017. (ECF No. 28). The Government filed a Motion to Intervene and Motion to Quash on October 24, 2017. The Motion to Quash asserts the state secrets privilege.

ORDER - 2

## II. Discussion

**A. Motion to Intervene** - The Government asserts the right to intervene in this matter pursuant to Fed.R.Civ.P. 24(a). Petitioners have filed a response to the Motion to Quash, but have not filed a response to the Motion to Intervene. Failure to file a response may be deemed consent to the entry of an adverse order. Local Rule 7.1(d). The court has reviewed the Motion and determined the Government has met the requirements for intervention. See *Mohamed v. Jeppesen Dataplan*, 539 F.Supp.2d 1128, 1133 (N.D. Cal. 2008). The Motion to Intervene (ECF No. 29) is GRANTED.

**B. Motion to Quash** - The Government advances three arguments: 1) the court lacks subject matter jurisdiction due to 28 U.S.C. § 2241(e)(2), the Military Commissions Act; 2) the state secrets privilege bars the requested discovery; and 3) the CIA Act and NSA Act protect disclosure of the requested information. Petitioners contest all these assertions.

**1. The Military Commissions Act** - The relevant statutory provision, 28 U.S.C. 2241(e)(2) provides:

> (2) Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

The Ninth Circuit Court of Appeals has established a five element test for determining whether the court lacks jurisdiction under the MCA: 1) the action is against the "United States or its agents"; 2) the action relates to "any aspect of the detention, transfer, treatment, trial or conditions of confinement of an alien who is or was detained by the United States"; 3) the action relates to an alien who was "determined by the United States to have been properly detained as an enemy combatant" or an alien awaiting such a determination; 4) the action is other than an application for writ of habeas corpus; and

ORDER - 3

5) the action does not qualify for an exception under the Detainee Treatment Act. *Hamad v. Gates*, 732 F.3d 990, 995 (9th Cir. 2013).

The Government argues the MCA applies and strips the court of jurisdiction. Petitioners argue the MCA does not apply for three reasons: 1) this is a non-adversarial proceeding and not an "action" as contemplated by the MCA; 2) the action is not against the United States or its agents, as the Government has not established Mitchell and Jessen are "agents"; and 3) the Government has not proven that either Petitioner is an "enemy combatant." (ECF No. 31, p. 6-7).

The Government's argument the court lacks jurisdiction is asserted in a short and limited manner. The Government devotes just a page and a half of its 25-page brief to the jurisdictional argument, which if accepted, would be dispositive. Counsel for the Government, Mr. Warden, was also counsel in *Salim v. Mitchell*, 15-286-JLQ, and is aware a similar jurisdictional argument was advanced in *Salim*. The Government is aware the court rejected the argument in *Salim* for two reasons: 1) Defendants in *Salim* did not establish Mr. Mitchell and Mr. Jessen were "agents of the United States"; and 2) Defendants had not established Plaintiffs were "enemy combatants." (ECF No. 135 in Case No. 15-CV-286-JLQ). Petitioners herein argue the Government offers nothing to establish an agency relationship between Mitchell and Jessen and the United States.

The MCA does not deprive the court of jurisdiction over this matter. The court rejects Petitioners' argument this legal proceeding is not an "action", but the court does agree it is not "against the United States or its agents." The United States was not named in this action, and is not a respondent to the subpoenas. The court, in *Salim v. Mitchell*, 15-286-JLQ, previously analyzed the agency issue and found an agency relationship between Mitchell and Jessen and the United States was not established. The determination in *Salim* was based on a more fulsome evidentiary record than has been presented in this matter.

The Government, as the party asserting agency, has the burden of establishing it. See *Atrium of Princeton v. NLRB*, 684 F.3d 1310, 1315 (D.C. Cir. 2012)("The party

ORDER - 4

asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence"); and *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1296 (5th Cir. 1994)("Agency is never to be presumed; it must be shown affirmatively."). In *Salim* the court discussed how the contracts between the CIA and Mitchell and Jessen referred to Mitchell and Jessen as "independent contractors." Defendants are referred to as "independent contractors" in their contracts with the Government and not as "agents". (For more detailed discussion see court's Order of January 27, 2017 at ECF No. 135 in Case No. 15-286). However, "whether a relationship is characterized as an agency in an agreement between parties or in the context of the industry or popular usage is not controlling." *Restatement (Third) of Agency* § 1.02 (2006). Rather, "agency", as defined at common law, "posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person." *Id*. at § 1.01, Comment (c). The Restatement states "the common term 'independent contractor' is equivocal in meaning and confusing in usage because some termed independent contractors are agents while others are nonagent service providers." *Id*. The Ninth Circuit, albeit in a different context, has agreed the term is equivocal: "Unlike employees, independent contractors are not ordinarily agents." *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010). However, independent contractor status "does not preclude a finding the speaker is also an agent for some purposes." *Id*.

The MCA does not strip the court of subject matter jurisdiction over this proceeding concerning an application for discovery under 28 U.S.C. § 1782. This matter was not filed "against" the United States. The Government has not established Mitchell and Jessen are or were agents of the United States, and even as to "enemy combatant" status the record is sparse. Although it may be commonly known that Abu Zubaydah has been categorized as an "enemy combatant," Petitioners pointed out in their Response the Government had failed to provide such evidence. (ECF No. 31, p. 7). The Government then belatedly filed additional factual material with its Reply brief supporting the

ORDER - 5

1  assertion that Abu Zubaydah is an "enemy combatant." It is generally not appropriate to
2  introduce new factual material with a reply brief. For all the aforesaid reasons, the
3  Government's argument the court lacks jurisdiction is rejected.

4  **2. <u>The State Secrets Privilege</u>** - The Government argues the court should quash
5  the subpoenas and issue a protective order prohibiting the requested depositions and all
6  document discovery. (ECF No. 30, p. 7). The Government argues the requested
7  discovery is "predicated on a singular allegation that the United States can neither
8  confirm nor deny without risking significant harm to national security–that is, whether
9  or not the CIA conducted detention and interrogation operations in Poland or with the
10 assistance of the Polish Government." (*Id*.). The Government contends the "entire line
11 of inquiry is prohibited" (*Id*.) and the discovery must be precluded in its entirety.

12 Petitioners counter stating the discovery need not be precluded in its entirety.
13 Petitioners argue the Government has already allowed Mitchell and Jessen to testify and
14 produce evidence in *Salim v. Mitchell*, and they did so with reference to "Detention Site
15 Cobalt" without acknowledging its location, even though it is widely believed to have
16 been in Afghanistan. (ECF No. 31, p. 22). Similarly, Petitioners argue Mitchell and
17 Jessen can testify in regard to "Detention Site Blue" without testifying to the location of
18 the site or the cooperation of any foreign government. Petitioners contend: "Valuable
19 discovery may proceed without requiring Respondents to confirm either the location of
20 any particular site, or the cooperation of any particular government." (ECF No. 31, p. 16).

21 The state secrets doctrine encompasses two applications: 1) complete bar to
22 adjudication of claims premised on state secrets (the 'Totten bar', *Totten v. United States*,
23 92 U.S. 105 (1876)); and 2) an evidentiary privilege that excludes privileged evidence
24 from the case and may result in dismissal of a claim (the 'Reynolds privilege', *United
25 States v. Reynolds*, 345 U.S. 1 (1953)). The *Totten* bar does not apply in this case. This
26 is not an action where "the very subject matter of the action is a matter of state secret."
27 *Mohamed v. Jeppesen Dataplan, Inc*., 614 F.3d 1070, 1078 (9th Cir. 2010)(en banc). In
28 fact, *Mohamed*, dealt with the CIA's rendition, detention, and interrogation program and

ORDER - 6

applied the *Reynolds* privilege analysis. Similarly, in *El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007), plaintiff claimed he was rendered, detained, and interrogated by the CIA in 2004. The court applied a *Reynolds* analysis rather than the *Totten* bar. In both *El-Masri* and *Mohamed* the court found application of the *Reynolds* privilege required dismissal of the case.

Both *El-Masri* and *Mohamed* were opinions issued years before the Senate Select Committee on Intelligence ("SSCI") issued its report in 2014 on the CIA enhanced interrogation program. In *Mohamed* the Ninth Circuit specifically stated: "we do not hold that the existence of the extraordinary rendition program is itself a state secret." *Id.* at 1090. The Circuit also stated, "partial disclosure of the existence and even some aspects of the extraordinary rendition program does not preclude other details from remaining state secrets if their disclosure would risk grave harm to national security." *Id.* at 1090. The *Totten* bar does not apply.

**(a) The Reynolds Privilege** - In the case *United States v. Reynolds*, 345 U.S. 1 (1953), the plaintiffs were the widows of three civilian observers who died in an airplane crash where onboard the aircraft the military was testing "secret electronic equipment." In discovery, Plaintiffs in *Reynolds* sought an Air Force official accident report and the statements of three survivors. The Government asserted a national security interest in not disclosing the information. The court stated: "The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked." *Id*. at 532.

The court stated in determining if the privilege applies: "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers. Yet we will not go so far as to say that the court may automatically require a complete disclosure to the judge before the claim of privilege will be accepted in any case."*Id*. at 9-10. If there is "a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged," then the privilege applies. *Id*. at 10. The greater the showing of necessity for the information will determine

ORDER - 7

how far the court must probe in determining if the privilege applies, "but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." *Id*. at 11.  In *Reynolds*, the court remanded for further proceedings because "it should be possible for respondents to adduce the essential facts as to causation without resort to material touching upon military secrets." *Id*.

**(b) *Mohamed v. Jeppesen Dataplan, Inc*.**, 614 F.3d 1070, 1077 (9th Cir. 2010)(en banc), is the leading authority on the state secrets doctrine in the Ninth Circuit and application of the *Reynolds* privilege. It sets forth a three-step analysis:

1) First, the court must "ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied";

2) Second, the court must make an independent determination whether the information is privileged; and

3) Third, the court must determine how the matter will proceed in light of a successful privilege claim. *Id.* at 1080.

The procedural component requires "a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by the officer." *Id*.  The second step of the *Reynolds* analysis "places on the court a special burden to assure itself that an appropriate balance is struck between protecting national security matters and preserving an open court system." *Id*. at 1081.  Third, the court must determine how the matter will proceed if the privilege applies. There are three circumstances, discussed further *infra*, when the *Reynolds* privilege may justify terminating the case.

**(c) Step 1: Procedural Requirements**

In this case, a formal claim of the state secret privilege requires the claim be made by the director of the CIA.  The Government has made this claim, supported by the Declaration of CIA Director Michael Pompeo (ECF No. 30-1).  The Government states it also utilized the Executive Branch guidance issued in 2009 by Attorney General Holder which requires assertion of the privilege be approved by the Attorney General. (ECF No.

ORDER - 8

30, p. 11)  The Government did not file a Declaration from Attorney General Sessions, but states the guidance memo was followed, including "personal consideration of the matter by the Attorney General and authorization by him to defend the assertion of the privilege." (*Id.*).

In *Mohamed*, the Ninth Circuit stated it was "informed at oral argument that the current Attorney General Eric Holder, has also reviewed and approved the ongoing claim of privilege." 614 F.3d at 1080.  The *Mohamed* court stated, "although *Reynolds* does not require review and approval by the Attorney General .... such additional review by the executive branch's chief lawyer is appropriate and to be encouraged." *Id*.  Petitioners do not challenge that the Government has fulfilled the procedural requirements for invoking the state secrets privilege. (ECF No. 31, p. 10).

The claim of state secrets privilege "must be presented in sufficient detail for the court to make an independent determination of the validity of the claim of privilege and the scope of the evidence subject to the privilege." *Mohamed* at 1080.  The Pompeo Declaration states through the exercise of his official duties he has become familiar with this lawsuit and the claims therein. (ECF No. 30-1, ¶ 4).  Director Pompeo states he is aware of the European Court of Human Rights' decision and the award of money damages to Abu Zubaydah. (*Id.*).  He states he is asserting the state secrets privilege after "careful and personal consideration ... to protect and preserve national security information, the disclosure of which reasonably could be expected to cause serious, and in many instances, exceptionally grave damage to U.S. national security." (*Id*. at ¶ 2).

Director Pompeo states he is asserting the privilege over various categories of information, including: 1) information identifying individuals involved with the Program; 2) information regarding foreign government cooperation with CIA; 3) information concerning the operation and location of clandestine overseas CIA facilities; 4) information regarding capture and transfer of detainees; 5) intelligence information about detainees and terrorist organizations, including intelligence obtained from interrogations; 6) information concerning intelligence sources and methods; and 7) information

ORDER - 9

concerning the CIA's internal structure and administration. (*Id*. at ¶6). Of most import to the subpoenas at issue are the two categories concerning the operation and locations of overseas CIA facilities and information regarding foreign government cooperation with the CIA.

Pompeo states: "whether or not the CIA conducted detention and interrogation operations in Poland and/or with the assistance of the Polish Government – remains a classified fact that cannot be divulged without risking significant damage to national security." (*Id*. at ¶ 8). The court finds the Government has fulfilled the procedural requirements for invoking the privilege.

**(d)  Step Two - Evaluation of the Claim of Privilege** -

The second step of the *Reynolds* analysis "places on the court a special burden to assure itself that an appropriate balance is struck between protecting national security matters and preserving an open court system." *Mohamed v. Jeppesen Dataplan*, 614 F.3d 1070, 1081 (9th Cir. 2010). The Ninth Circuit stated: "In evaluating the need for secrecy we acknowledge the need to defer to the Executive on matters of foreign policy and national security and surely cannot legitimately find ourselves second guessing the Executive in this arena. But the state secrets doctrine does not represent a surrender of judicial control over access to the courts." *Id*. at 1081-82. The Ninth Circuit instructs courts to view claims of state secrets privilege with a "skeptical eye" and not accept at "face value" claims of privilege, but cautions "too much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect." *Id*. at 1082.

At the second step of the *Reynolds* analysis, the court must sustain a claim of privilege if "it is satisfied from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose matters which, in the interest of national security, should not be divulged." *Mohamed* at 1081. The court states "we do not offer a detailed definition of what constitutes a state secret ... We do note, however, that **an executive decision to classify information is insufficient to establish the**

ORDER - 10

**information is privileged**." *Id*. at 1082 (emphasis added).  Although classification may be some support for a determination of privilege, it is not conclusive. *Id*.

In *Mohamed*, the Government asserted the privilege over four categories of evidence: 1) information that would tend to confirm or deny whether Defendant or another private entity assisted the CIA with clandestine intelligence activities; 2) information about whether any foreign government cooperated with the CIA in clandestine activities; 3) information about the scope or operation of the CIA detention and interrogation program; and 4) any other information concerning CIA clandestine intelligence operations that would reveal activities, sources, or methods. *Id*. at 1086. The Ninth Circuit stated: "These indisputably are matters that the state secrets privilege may cover." *Id*. These categories are similar, or in some instances, identical to the categories of information at issue herein.

Petitioners argue the Government has not provided a convincing argument harm to national security would result from responding to the discovery.  The Government argues identifying foreign cooperating governments would make them less likely to cooperate in the future, or embarrass the foreign government, damage relations, etc. Petitioners argue the alleged threat to national security in this case is "illusory". (ECF No. 31, p. 12). Petitioners point out the Polish government itself has requested some of the information now being sought through MLAT requests, and the Polish criminal proceeding seeks such information now.

Petitioners also rebut the argument that if the Government acknowledges Poland cooperated, Poland might be at greater risk from terrorists or other bad actors. Petitioners state: "If the Government's fears have any foundation, the harm the Government warns of has already come to pass." (*Id*. at 13). Petitioners argue the European Court of Human Rights ("ECHR") has already found, based on a standard of proof beyond a reasonable doubt, that the CIA operated a facility at Stare Kiejkuty, Poland. (Citing to ECHR Opinion at ¶ 419; ECF No. 12-1). Petitioners convincingly argue, "given the notoriety of these facts, there must logically come a point at which they have become so widely and

ORDER - 11

credibly recognized as true that confirmation or denial cannot exacerbate the harm already done." (ECF No. 31, p. 14).

Petitioners stated at oral argument that in order to be a "state secret" a fact must first be a "secret." The Government contended at the hearing the CIA has never officially acknowledged any foreign government assisted with the CIA's Detention and Interrogation Program and the names of foreign governments were redacted from the Senate Select Committee's Report issued in 2014. The Government also argued the Ninth Circuit, in *Jeppesen Dataplan*, had addressed the same argument -- that the fact some information about the Detention and Interrogation Program was being publicly reported in the media, did not mean the Government could not assert the privilege. The Ninth Circuit has also recently stated: "National security concerns can, of course, provide a compelling reason for shrouding in secrecy even documents once in the public domain." *Ground Zero Center v. United States Navy*, 860 F.3d 1244, 1262 (9th Cir. 2017). However, in assessing the compelling reason, the court stated it would consider the allegation of harm to national security and also "the extent to which the information [the documents] contain already has been publicly disclosed." *Id*.

The Second Circuit, in the context of a Freedom of Information Act ("FOIA") request, also rejected the argument that because some of the withheld information was so general in relation to previously disclosed information of the CIA, it could not compromise national security. *ACLU v. Department of Justice*, 681 F.3d 61, 71 (2nd Cir. 2012). The court stated, "even if the redacted information seems innocuous in the context of what is already known by the public, minor details of intelligence information may reveal more information than their apparent insignificance suggests because, much like a piece of a jigsaw puzzle, each detail may aid in piecing together other bits of information even when the individual piece is not of obvious importance itself." *Id*. The court found it was both "logical and plausible" disclosure of the information could jeopardize the CIA's work with foreign intelligence liaison partners. *Id*. The Second Circuit was also quite deferential to the Government's assertion that harm to national

ORDER - 12

security may result: "We have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." Id. at 70.

The Government herein relies heavily on *Jeppesen Dataplan,* a 6-to-5 *en banc* decision of the Ninth Circuit Court of Appeals. The decision was rendered in 2010, when more aspects of the CIA's Detention and Interrogation Program were secret. In 2014, the Senate Select Committee made public portions of its report, revealing additional information about the Program, but also still withholding many specific details. However, as this court stated in *Salim*, the fact that some details have been made public by the Government or otherwise reported by the media, does not compel the Government to release other classified information concerning the Program. Although the Government has, over the years, made public certain details about the Program, others remain classified. It is generally not for this court to second-guess such determinations. See *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007)("we acknowledge the need to defer to the Executive on matters of foreign policy and national security and surely cannot legitimately find ourselves second guessing the Executive in this arena"). The court is not aware of there being any mention of Poland in the over 500-page Executive Summary to the SSCI Report concerning the Detention and Interrogation Program that the Senate Select Committee released to the public. The Petitioners contend references to "Detention Site Blue" in the Report refer to Poland, but the Government has not officially acknowledged Poland's cooperation or assistance with the Program.

The Government argues official acknowledgment is an important concept and is distinct from information simply being reported in the media or by non-governmental sources. Courts, at least in the context of FOIA requests, have largely agreed with the Government's argument concerning official acknowledgment. See for example *ACLU v. U.S. Dept. of Defense*, 628 F.3d 612 (D.C. Circuit 2011). Therein, the D.C. Circuit applied a three criterion test for determining whether the information requested had been officially acknowledged: 1) the information requested must be as specific as the

ORDER - 13

information previously released; 2) the information requested must match the information previously disclosed; and 3) the information requested must already have been made public through an official and documented disclosure. *Id.* at 621. The D.C. Circuit further cited favorably to the Fourth Circuit's statement: "It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so." *Id.* at 621-22.

Viewing the Government's claim of privilege with a "skeptical eye," the court does not find convincing the claim that merely acknowledging, or denying, the fact the CIA was involved with a facility in Poland poses an exceptionally grave risk to national security. The fact has been the subject of governmental investigations in Poland and Europe going back to 2005 and 2007. According to the parties' briefs, in 2014, the former President of Poland, Kwasniewski, who was President from 2000 to 2005, acknowledged the cooperation with CIA, but claimed he did not have knowledge of "torture". The European Court of Human Rights has found by proof beyond a reasonable doubt the CIA operated a facility in Poland. The fact has also been fairly widely reported in media.

However, compelling Mitchell and Jessen to address the mere fact of whether they were part of CIA operations conducted in Poland, or whether they interrogated Zubaydah in Poland, would not seem to aid the Polish investigation. The Polish investigators already have a ECHR Opinion finding that Poland was complicit "in that it enabled the US authorities to subject the applicant [Abu Zubaydah] to torture and other ill treatment on its territory." (ECF No. 2-3, p. 14). Petitioners seek to obtain more detail as to what occurred and who was involved. At oral argument, counsel for Petitioners stated they were particularly interested in the involvement of the locals, Polish citizens. However, directing Mitchell and Jessen to answer questions about the presence of Polish citizens, their identities if known, and their involvement with the Detention and Interrogation Program legitimately could jeopardize national security. The ECHR cites the 2007 Marty

ORDER - 14

1  Report, presented to the Parliamentary Assembly, which states: "The secret detention
2  facilities in Europe were run directly and exclusively by the CIA. To our knowledge, the
3  local staff had no meaningful contact with the prisoners and performed purely logistical
4  duties such as securing the outer perimeter." (ECF No. 2-3, p. 7). Disclosing operational
5  details concerning the staffing and securing of the sites, which would confirm or refute
6  what has been unofficially reported, could reasonably be expected to pose a risk to
7  national security, as averred to by Director Pompeo.

8        This case is different from *Salim* in an important respect because in *Salim*
9  discovery was on-going for several months before the Government then asserted various
10 privileges as to <u>specific</u> documents. Here, the Government seeks to preclude all
11 discovery. Additionally, in *Salim*, Mitchell and Jessen were both deposed at length.
12 Petitioners argue that even if the court upholds the privilege and allows the Government
13 to neither confirm or deny the CIA operated a facility in Poland, Petitioners can still
14 obtain useful information from the written discovery and depositions.

15       In *Jeppessen Dataplan*, the Ninth Circuit allowed the Government to assert the
16 *Reynolds* privilege at an early stage: "We also conclude that the government may assert
17 a *Reynolds* privilege claim prospectively, even at the pleading stage, rather than waiting
18 for an evidentiary dispute to arise during discovery or trial." 614 F.3d 1070, 1081 (9th Cir.
19 2010). This court could allow depositions to go forward, have the Government object,
20 and resolve specific objections, however that would likely prove futile as the Government
21 objects to any evidence or acknowledgment that a site for the Detention and Interrogation
22 Program was operated in Poland. This situation is analogous to that presented in *Salim*
23 by the request for deposition of Gina Haspel. Although there were numerous media
24 reports that Ms. Haspel, who is currently the Deputy Director of the CIA, had previously
25 managed a "black site" in a foreign country, the Government had never officially
26 acknowledged she had any role. As the Government would not confirm or deny she had
27 any role with the Program, this court did not allow the Haspel deposition to proceed. <u>See</u>
28 (Order of May 31, 2017, Case No. 15-286, ECF No. 188, p. 16-18).

ORDER - 15

Petitioners argue that depositions were conducted in *Salim*, and the detention site was just referred to by its code name "Detention Site Cobalt", without anyone confirming or denying it was in Afghanistan. Petitioners argue they should be allowed to pursue discovery in this case about "Detention Site Blue", and then others can decide whether there is sufficient evidence Detention Site Blue is the Stare Kiejkuty, Poland site. (ECF No. 31, p. 21). As to the document requests, 12 of the 13 requests mention "Poland" or "Polish," and the one which does not is an overbroad request for "all documents, memoranda and correspondence concerning Petitioner Abu Zubaydah." (ECF No. 1-2). The Government argues Petitioners "cannot avoid the application of the state secrets privilege by asking this court to re-write his subpoenas to seek non-privileged information." (ECF No. 34, p. 8). The Government is wrong on that contention. The court can modify or limit the scope of the subpoena. The Supreme Court in *Intel* specifically stated "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel Corp. v. AMD, Inc.*, 542 U.S. 241, 265 (2004). The Government argues that because this proceeding is discovery in aid of a foreign proceeding in Poland, no modification of the subpoenas or use of code names can "escape the fact the discovery he seeks is focused entirely on alleged events in Poland." (ECF No. 34, p. 9).

The Government has asserted the privilege over aspects of the Detention and Interrogation Program and over matters which the Ninth Circuit has previously stated are "indisputably" matters which the privilege may cover. As set forth herein, the court particularly finds operational details concerning the specifics of cooperation with a foreign government, including the roles and identities of foreign individuals, to be covered by the claim of state secrets privilege.

**(e) Step Three - How Should the Matter Proceed**

Third, the court has determined the Government's assertion of privilege is valid, and must determine how the matter will proceed. The Government argues the court should uphold the privilege, quash the subpoenas, and dismiss the case. Generally, there are three circumstances when the *Reynolds* privilege justifies terminating the case:

ORDER - 16

1) if the plaintiff cannot prove the prima facie elements of his claim with nonprivileged evidence;

2) if the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim; and

3) litigating the case on the merits would present an unacceptable risk of disclosing state secrets because the privileged and nonprivileged evidence is "inseparable". *Id*. at 1083.

The first two circumstances are not applicable here, as this is purely a discovery proceeding. Petitioners argue discovery can proceed, as discussed *supra*, even without the Government confirming or denying operation of a detention facility in Poland. The court disagrees. As stated *supra*, 12 of the 13 document requests specifically reference Poland, and Petitioners stated at oral argument they wanted to garner information on the role of foreign (Polish) nationals. Allowing the matter to proceed with a code word, such as "detention site blue" to replace Poland seems disingenuous, and the Government participating could be viewed as implicit confirmation of operation of the Program in Poland. Even this seemingly innocuous fact can be protected by the privilege. See *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998)("If seemingly innocuous information is part of a classified mosaic, the state secrets privilege may be invoked to bar its disclosure and the court cannot order the government to disentangle this information from other classified information."). Meaningful discovery cannot proceed in this matter without disclosing information the Government contends is subject to the state secrets privilege. Proceeding with discovery would present an unacceptable risk of disclosing state secrets.

### 3. The CIA Act

The Government also relies on the CIA Act, 50 U.S.C. § 3507, in resisting the requested discovery and argues the Act prohibits the requested discovery. The Act provides, in part: "In the interests of the security of the foreign intelligence activities of the United States ... the Agency shall be exempted from ... the provisions of any other law which require the publication or disclosure of the organization, functions, names, official

ORDER - 17

titles, salaries, or numbers of personnel employed by the Agency." The Ninth Circuit has stated this statute provides the Director of the CIA shall "protect intelligence sources and methods from unauthorized disclosure." *Minier v. CIA*, 88 F.3d 796, 801 (9th Cir. 1996). The court stated the statute provides "broad authority" and the statutory mandate is "only a short step from exempting all CIA records from FOIA." *Id*. The court held the statute "authorizes the CIA's refusal to confirm or deny the existence of an employment relationship between itself and [an alleged agent]".

Petitioners argue the CIA Act does not apply by its plain terms because it "exempts the CIA – not private individuals" from provisions of law which require the publication or disclosure of "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507. (ECF No. 31, p. 24). Petitioners argue the CIA Act does not reach facts such as the location of a foreign detention site, nor does it apply to private citizens such as Mitchell and Jessen who are not CIA employees.

The CIA Act does protect disclosure of the names and functions of officers and protects intelligence sources and methods. The court need not elaborate on the Act's operation here, having found the state secrets privilege applies.

### 4. The NSA Act

The Government also cites to the NSA Act, 50 U.S.C. 3024(I) in support of its Motion to Quash. However, the Government devoted less than 1-page of its 25-page brief to arguing both the CIA and NSA Act. The NSA Act provides: "The Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." In *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) the Ninth Circuit stated, "courts are required to give great deference to the CIA's assertion that a particular disclosure could reveal intelligence sources or methods."

Petitioners argue the NSA Act does not apply because it specifically states the "Director of National Intelligence" shall protect sources and methods and here we have no Declaration from the Director of National Intelligence. Further, Petitioners argue the

ORDER - 18

location of a foreign detention site is not a "source or method." (ECF No. 31, p. 23-24). The court finds it unnecessary to resolve this issue given its findings and conclusion the state secrets privilege applies.

### III. Conclusion

The Government's argument that merely confirming a detention site was operated in Poland would pose a grave risk to national security is not convincing. The fact of such operation has been widely reported, has been acknowledged by the individual who was President of Poland at the time the site allegedly operated, and has been found by proof beyond a reasonable doubt by the European Court of Human Rights. However, compelling Mitchell and Jessen to answer as to the mere fact of whether operations were conducted in Poland would not seem of much, if any, assistance to a Polish investigation. Rather, counsel for Petitioners said it would be useful if Mitchell and Jessen could identify if there were foreign (Polish) officials at the detention site, and the nature of their roles at the site. In regard to these particulars, after review, the court defers to the CIA Director's assertion that the release of such information could reasonably pose a grave risk to national security.

Upholding the state secrets privilege serves the interests of national security, an important and compelling interest. The Ninth Circuit in *Jeppessen Dataplan* recognized that sometimes honoring the importance of the national security interest, comes at the detriment of other important interests: transparency, accountability, and justice. 614 F.3d at 1073. The Ninth Circuit stated the court strives to honor all these important principles but "there are times when exceptional circumstances create an irreconcilable conflict between them." *Id*. The court then stated it must "reluctantly conclude" the case was one in which the national security interests, and assertion of the state secrets privilege required dismissal of the case. *Id*. The court further acknowledged the case presented "a painful conflict between human rights and national security." *Id*. at 1093. Similarly, this court concludes the CIA Director's assertion of the Government's national security interests and assertion of the state secrets privilege necessitates dismissal of the action.

ORDER - 19

**IT IS HEREBY ORDERED**:

1. The Government's Motion to Intervene (ECF No. 29) is **GRANTED**.

2. The Government's Motion to Quash (ECF No. 30) is **GRANTED**.

3. The Clerk is directed to enter Judgment dismissing the Application for Discovery (ECF No. 1) and close the file.

**IT IS SO ORDERED**. The Clerk shall file this Order, enter Judgment, and furnish copies to counsel.

Dated this 21st day of February, 2018.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 20